IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DALE FURNISS, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-863-JJF |
| MICHAEL J. ASTRUE[1], Commissioner of Social Security, | : |
| Defendant. | : |

Anthony R. Mignini, Esquire of MIGNINI & RAAB, LLP, Bel Air, Maryland.
John S. Grady, Esquire of GRADY & HAMPTON, LLC, Dover, Delaware.

Attorney for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Michael McGaughran, Esquire, Regional Chief Counsel of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
David F. Chermol, Esquire, Special Assistant United States Attorney of the OFFICE OF THE UNITED STATES ATTORNEY, Philadelphia, Pennsylvania.

Attorneys for Defendant.

## MEMORANDUM OPINION

March 30, 2007
Wilmington, Delaware

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted for the former Commissioner JoAnne B. Barnhart.

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Dale Furniss, seeking review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Plaintiff has filed a Motion For Summary Judgment (D.I. 19) requesting the Court to enter judgment in his favor. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 21) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Motion For Summary Judgment will be denied, and Plaintiff's Motion For Summary Judgment will be granted. The decision of the Commissioner dated November 17, 2003, will be reversed, and this matter will be remanded to the Commissioner for further findings and/or proceedings consistent with this Memorandum Opinion.

## BACKGROUND

### I. Procedural Background

Plaintiff filed the current application for DIB on August 7, 2001, alleging disability as of July 24, 1996, due to back pain. (Tr. 42, 47, 103, 106, 145, 187.) Plaintiff's application was denied initially and upon reconsideration. (Tr. 81-84, 86-89.) Plaintiff filed a timely request for an administrative

hearing, and the A.L.J. held a hearing on July 23, 2003. (Tr. 34-56.) Plaintiff was represented by counsel at the hearing, and a vocational expert testified.

Following the hearing, the A.L.J. issued a decision dated November 17, 2003, denying Plaintiff's claim for DIB. (Tr. 23-32.) Plaintiff filed an appeal, and the Appeal's Council denied review. (Tr. 5-8.) Accordingly, the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g), seeking review of the A.L.J.'s decision denying his claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I. 11) and the Transcript (D.I. 13) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief (D.I. 19, 20) in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a combined Opening and Answering Brief (D.I. 21, 22) requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Response to Defendant's Motion For Summary Judgment (D.I. 23), and therefore, this matter is fully briefed and ready for the Court's review.

## II. Factual Background

   A.  <u>Plaintiff's Medical History, Condition and Treatment</u>

At the time the A.L.J. issued his decision, Plaintiff was forty-two years old. (Tr. 106.) Plaintiff has a ninth grade education and specialized vocational training as a certified welder, pipe fitter, and boiler worker. (Tr. 38, 151, 193.) Plaintiff has past relevant work as a carpenter, boiler maker, welder/fitter, and heavy equipment operator. Each of these positions is considered medium to heavy skilled work. (Tr. 53.) Plaintiff last worked in July 1996, after he injured his back in a work-place accident. (Tr. 41.) For purposes of his DIB application, the last day Plaintiff was insured was December 31, 2001. (Tr. 136.)

Following his 1996 accident, Plaintiff suffered some moderate degenerative changes in his lumbar spine, with no evidence of any disc herniations, spondyloysis, spondylolisthesis, or nerve root impingement (Tr. 235, 525, 544, 545.) Plaintiff also suffered from muscle spasms and was prescribed a variety of medications for his pain.

Among others, Plaintiff treated with Peter B. Bandera, M.D. who referred Plaintiff to Agha Hussein, M.D. for a consultation in February 1998. Dr. Hussein found that Plaintiff's "motor sense is 5/5 except questionable 4/5 left hip." (Tr. 277.) Dr.

Hussein also noted that Plaintiff had a decrease flexion due to pain and some tenderness in his lower thoracic parmedian and lumbar median areas; however, Dr. Hussein noted that Plaintiff's "neck has full range of motion while he was talking during the interview, but when asked to do range of motion, it was decreased." (Id.) Dr. Hussein's impression was the "[p]ossibility of lumbar radiculopathy," but he noted a "component of secondary gain." (Id.)

In a report to Plaintiff's attorney handling his worker's compensation case, Dr. Bandera opined that Plaintiff suffered from advanced degenerative disc disease at L3-4, with mild degenerative changes at T7 to T9, sacroiliac joint sclerosis and active right L4 radiculopathy. According to Dr. Bandera Plaintiff suffered a "28% partial permanent disability relative to the lumbosacral spine." (Tr. 258.) Dr. Bandera went on to opine that "[f]rom a functional perspective, the patient realistically cannot execute physical labor; he is restricted in all basic activities of daily living." (Id.) Dr. Bandera was also deposed in connection with Plaintiff's worker's compensation claim where he reiterated his opinions.

The record also contains a second, conflicting opinion from Robert J. Varipapa, M.D., a board certified neurologist, who examined Plaintiff at the request of the worker's compensation

4

insurance company on two separate occasions and was also deposed in connection with the case. Dr. Varipapa testified that Plaintiff had a normal range of motion in his cervical spine, some pain with palpation of the right knee that was subjective in nature, mild back pain, pain with forward flexion, pain in the groin with palpation and no muscle spasm. His neurological examination was within normal limits, with no motor, sensory or reflex abnormalities and no evidence of radiculopathy from any of the diagnostic tests performed on Plaintiff. Dr. Varipapa characterized his examination as basically normal, except for some tenderness with palpation and some mild limitation in range of motion. Dr. Varipapa's opinions did not change with his second examination. With respect to Plaintiff's complaints of pain, Dr. Varipapa stated, "My feeling is that this patient has a host of symptomatology, which in all honesty appears to be much greater than one would expect based on the injury he had." (Tr. 307.)

For purposes of worker's compensation, Dr. Varipapa opined that Plaintiff had a 5% whole person impairment rating, which he characterized as "really generous" given the lack of any evidence supporting radiculopathy, loss of motion in segment integrity, atrophy, loss of reflexes or loss of spine motion. (Tr. 315.) Thus, Dr. Varipapa found no evidence to support Dr. Bandera's assessment, and the worker's compensation board ultimately agreed with the opinions offered by Dr. Varipapa.

5

Plaintiff also underwent a psychiatric consultative examination in August 1999 by Peeyush Mittal, M.D. (Tr. 335-338.) Plaintiff reported poor sleep due to pain, tiredness and feelings of hopelessness. Plaintiff performed appropriately on the 20 minus 3 concentration test, but could not do the 100 minus 7 test and showed no interest in either test. Plaintiff exhibited partial judgment and insight. Dr. Mittal assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of forty-seven, which is consistent with an individual with a severe impairment both psychologically and occupationally.

Both in connection with his current and previous disability applications, Plaintiff's condition was evaluated by three, non-examining state agency physicians. The first two physicians concluded that Plaintiff could perform a range of light work despite his impairments. (Tr. 367-374, 388-396.) A third state agency physician who reviewed updated evidence in September 2001 opined that Plaintiff could perform a range of sedentary work. (Tr. 478-485.) Specifically, the third state agency physician opined that Plaintiff could occasionally lift ten pounds, but could not lift ten pounds frequently. He found that Plaintiff could stand or work at least 2 hours in an 8 hour work day and could sit 6 hours in an 8 hour work day. Although Plaintiff could engage in unlimited pushing and pulling, the state agency physician opined that he should only occasionally engage in postural activities like climbing, balancing, stooping, kneeling, crouching, and crawling.

6

Plaintiff also treated with his primary care physician, J.K. Beebe, M.D. Dr. Beebe noted that Plaintiff suffered from stress, back pain, joint pain and anxiety, as well as a variety of other medical conditions unrelated to the complaints of back pain forming the basis for his DIB claim. Dr. Beebe noted that Plaintiff's other conditions were well controlled, but that Plaintiff "remains disabled due to pain in his back which has been evaluated extensively through a number of physicians other than myself." (Tr. 486.) Dr. Beebe went on to say, "It is my opinion that as the patient has been out of work for greater than 4 years owing to his back pain, it is unlikely that he will ever return to gainful employment." (Tr. 487.) Dr. Beebe completed a physical residual capacity questionnaire for Plaintiff on November 5, 2002, and opined that he could not work due to sitting and standing restrictions and the likelihood of frequent absenteeism. (Tr. 507-510.) Specifically, Dr. Beebe noted that Plaintiff could sit for no more than 15 minutes and stand for no more than 5 minutes continuously. He also found that Plaintiff could sit and/or stand/walk less than 2 hours in an 8 hour day. Dr. Beebe noted no psychological conditions affecting Plaintiff, and only that certain metabolic diseases contributed to his disability. (Tr. 507.)

A consultative examination was also performed by William Barrish, M.D. in September 2002. (Tr. 489-499.) Dr. Barrish noted Plaintiff's past treatment history, and upon examination found that Plaintiffs lower extremity strength reveals "give-way,

secondary to pain," but that his strength was at least 4/5 throughout.  Dr. Barrish noted decreased range of motion with guarding, secondary to pain and tenderness to palpation in the midline of the lumbar spine.  Straight leg raising tests were negative and his "gait reveals stiffness and guarding."  Dr. Barrish opined that despite these limitations, Plaintiff could sit for 6-8 hours per day, with frequent changes in position every 20-30 minutes; stand and walk one to two hours per day; and that lifting and carrying should be limited to 10 pounds frequently and 10 pounds occasionally.  Dr. Barrish added that Plaintiff should avoid bending, crawling, crouching and stooping, performing such activities only occasionally, and that grasping and handling could be performed frequently.  As a result, Dr. Barrish opined that Plaintiff remained capable of performing a range of sedentary work.  (Tr. 492-499.)

B.    The A.L.J.'s Decision

On July 23, 2003, the A.L.J. conducted a hearing on Plaintiff's application for benefits.  At the hearing, Plaintiff was represented by counsel.  Plaintiff testified that he drives sometimes, can only walk for about 15 minutes and can sit for 10-15 minutes before wanting to change positions.  He estimated that he could lift ten to fifteen pounds, but that heavy objects pulled on his back.  Plaintiff testified that he only knows construction work, and "I don't think I'd be very good sitting in an office, or trying to do something like that.  I know I couldn't do that."  (Tr. 48.)  Plaintiff's testimony at the

8

hearing was consistent with his responses to the Daily Activities Questionnaire, in which he noted that he performed non-strenuous household chores occasionally, had difficulty sleeping and concentrating, minimal social contacts and significant pain.

In addition to Plaintiff, a vocational expert testified. The A.L.J. asked the vocational expert to assume a lifting limitation of ten pounds and the ability to sit and stand each half of the work day, with a change in position every half hour. The vocational expert identified two areas of jobs that such an individual could perform, telephone work and surveilling.  By way of specific example, the vocational expert identified 1,000 jobs in Delaware and over 90 nationally for the position of surveillance system monitor, and 1,100 jobs in Delaware and over 1,400,000 nationally for the position of telephone information clerk, financial institutions.  The A.L.J. went on to ask whether those jobs could still be performed if the individual "because of severe pain, combined with the side effects of narcotic medications, [] couldn't concentrate even on one or two step tasks."  (Tr. 55.)  The vocational expert testified that such an individual could not perform any work.

In his decision dated November 17, 2003, the A.L.J. found that Plaintiff's back problem was a "severe" impairment, but that it did not meet or equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P. app. 1 (2003).  (Tr. 21.)  The A.L.J. further found that Plaintiff's depression caused no limitations upon his daily activities, no limitations upon his concentration,

9

persistence or pace, mild limitations on his social functioning, and no episodes of decompensation. The A.L.J. further found that Plaintiff was not fully credible and that he could lift, carry, push and pull up to ten pounds at a time, walk or stand for up to two hours per workday and sit for up to six hours per day as long as he had a sit/stand option at will. As a result, the A.L.J. found that plaintiff could perform a significant range of sedentary work, but not the full range. Using Medical Vocational Rule 201.25 as a framework for decision making, the A.L.J. concluded that Plaintiff could perform a significant number of jobs in the national economy, and therefore, he was not disabled within the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed that "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**DISCUSSION**

I.  **Evaluation Of Disability Claims**

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

11

impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. § 404.1512(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. § 404.1520. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the

medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. Id. at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. Id. The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

13

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. erred in (1) finding that Plaintiff's diabetes mellitus and depression were not severe impairments; (2) evaluating Plaintiff's pain and credibility; (3) failing to give proper weight to the opinion of Plaintiff's treating physician; and (4) failing to provide the vocational expert with a proper hypothetical question.

The Court has reviewed the A.L.J.'s decision in light of Plaintiff's arguments and concludes that a remand is appropriate. The step two severity analysis is considered a de minimis screening device to dispose of groundless claims" and reasonable doubts regarding the severity of an impairment are to be resolved in favor of the claimant. Newell v. Commissioner of Social Security, 347 F.3d 541, 546 (3d Cir. 2003). Given the record evidence concerning Plaintiff's depression, including the fact that at least two state agency physicians recognized the Plaintiff's depression as a legitimate impairment in their assessments, the Court concludes that it was error for the A.L.J. to find this impairment non-severe. This error in turn affected the A.L.J.'s disability analysis because the A.L.J. did not consider the correct combination of Plaintiff's impairments on his ability to work.

In addition, in evaluating Plaintiff's pain, the Court concludes that the A.L.J. erred in failing to consider the effects, if any, of Plaintiff's medication on his ability to work. In this regard, the Court concludes that the A.L.J.'s pain analysis was incomplete and a remand is required for the A.L.J. to explicitly address any side-effects from Plaintiff's medications. Stewart v. Secretary of Health, Educ., & Welfare, 714 F.2d 287, 290 (3d Cir. 1983) (refusing to find that the A.L.J.'s "implicit rejection" of the claimant's side effects was supported by substantial evidence where the A.L.J. gave no indication in his opinion that he considered the issue and remanding the matter for further findings).

As for the A.L.J.'s decision to credit the opinions of Dr. Barrish over Plaintiff's treating physician, Dr. Beebe, the Court also finds inconsistencies in the A.L.J.'s opinion that warrant clarification through a remand. On the one hand, the A.L.J. wrote that she did not find Dr. Barrish's September 2002 examination to be particularly relevant to the time period on or before December 31, 2001. However, the A.L.J. went on to credit that very opinion stating that "[a]lthough they were generated after the date-last-insured, I find that the opinions of the state agency physician and Dr. Barrish are both more congruent with the objective medical evidence than that of Dr. Beebe." (Tr. 29.)

15

Further, the Court concludes that the A.L.J.'s hypothetical question to the Commissioner failed to include all of Plaintiff's limitations. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In this regard, the A.L.J. credited the opinion of Dr. Barrish; however, the A.L.J. did not take into account all of the limitations raised by Dr. Barrish. Specifically, Dr. Barrish opined that Plaintiff could only stand and/or walk 2 hours in an 8-hour work day, yet the A.L.J. asked the vocational expert to consider an individual who could sit and stand each half of the work day, alternating every half hour. In the Court's view, the A.L.J.'s hypothetical question is less than clear in that it suggests that the individual could stand half of the work day, which would be 4 hours. Because this limitation is inconsistent with the opinion of the physician the A.L.J. credited, the Court concludes that further clarification by the A.L.J. is required. Accordingly, the Court will reverse the decision of the Commissioner and remand this matter for further findings and/or proceedings consistent with this opinion.

## CONCLUSION

For the reasons discussed, the Court will deny Defendant's Motion For Summary Judgment and grant Plaintiff's Motion For Summary Judgment. The decision of the Commissioner dated

16

November 17, 2003, will be reversed and this matter will be remanded to the Commissioner for further findings and/or proceedings consistent with this Memorandum Opinion.

An appropriate Order will be entered.